*Wanda Daughtry, et al. v. Jeffrey Nadel, et al.*, No. 1814, September Term, 2019.
Opinion by Fader, C.J.

**MORTGAGES AND DEEDS OF TRUST — FORECLOSURES — TIME FOR PROCEEDINGS; LIMITATIONS AND LACHES**

There is no statute of limitations that applies to foreclosure actions.

**JUDGMENT — MERGER AND BAR OF CAUSES OF ACTION AND DEFENSES — IDENTITY OF CAUSE OF ACTION IN GENERAL**

The circuit court was correct in finding that an action to reform a subordination agreement was not the same cause of action as a foreclosure action for the purposes of res judicata.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1814

September Term, 2019

_____

WANDA DAUGHTRY, ET AL.

v.

JEFFREY NADEL, ET AL.

_____

Fader, C.J.,
Kehoe,
Berger,

JJ.

_____

Opinion by Fader, C.J.

_____

Filed: December 16, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

More than 70 years ago, the Court of Appeals held that "[t]here is no Statute of Limitations in Maryland applicable to foreclosure of mortgages." *Cunningham v. Davidoff*, 188 Md. 437, 442 (1947). Wanda and Nathaniel Daughtry, the appellants, contend that *Cunningham* is no longer good law; that the three-year statute of limitations in § 5-101 of the Courts and Judicial Proceedings Article (Repl. 2020) now applies to mortgage foreclosures; and that the Circuit Court for Prince George's County therefore erred in denying their motion to dismiss a foreclosure action that was initiated more than three years after they defaulted on their mortgage loan. The Substitute Trustees who brought the foreclosure action,[1] the appellees, contend that *Cunningham* remains the law of Maryland. The circuit court agreed with the Substitute Trustees, as do we. We also hold that res judicata did not bar the foreclosure action. Accordingly, we will affirm.

## BACKGROUND

The Daughtrys are the record owners of residential property located in Prince George's County (the "Property"). In 2007, the Daughtrys borrowed $918,900.00 from Liberty Mortgage Corporation to refinance the Property, evidenced by a promissory note and secured by a deed of trust containing a power-of-sale provision (the "2007 Deed of Trust"). In 2012, the Daughtrys defaulted on the loan.

In November 2015, a trustee acting on behalf of the then-current holder of the note filed suit in the Circuit Court for Prince George's County against Capital One National

---

[1] The Substitute Trustees are Jeffrey Nadel, Scott Nadel, Daniel Menchel, and Doreen Strothman, on behalf of MTGLQ Investors, LP.

Association, which also held a lien secured by the Property, and the Daughtrys.[2]  The trustee sought:  (1) reformation of a subordination agreement that misidentified a deed of trust in favor of Capital One as being superior to the 2007 Deed of Trust; and (2) a declaration that the 2007 Deed of Trust created an enforceable lien against the Property. In April 2017, the circuit court entered judgment in favor of the trustee, ordered that the subordination agreement be reformed, and issued a declaratory judgment that the 2007 Deed of Trust created an enforceable lien against the Daughtrys' interest in the Property.[3] The Daughtrys noted an appeal but later voluntarily dismissed it.

In December 2018, the servicer of the loan secured by the 2007 Deed of Trust sent the Daughtrys a notice of intent to foreclose on the Property.  The notice stated that the loan was nearly six-and-a-half years past due and in default.  In February 2019, more than six years after the initial default, the noteholder appointed the Substitute Trustees to foreclose on the property.  The following month, the Substitute Trustees initiated this foreclosure action in the Circuit Court for Prince George's County.  After mediation failed, the Daughtrys filed a motion to dismiss or stay the foreclosure action, in which they contended, as relevant here, that the statute of limitations and res judicata barred the action.

---

[2] The litigation was initiated by Wilmington Savings Fund Society, d/b/a Christiana Trust, as Trustee for Stanwich Mortgage Loan Trust, Series 2013-7 ("Stanwich").  In October 2016, before judgment was entered in that lawsuit, the note and deed of trust were assigned to Wilmington Savings Fund Society, d/b/a Christiana Trust, as Trustee for Normandy Mortgage Loan Trust, Series 2016-1 ("Normandy").  The parties do not dispute that Stanwich and Normandy are predecessors in interest of current lienholder MTGLQ Investors.

[3] The court entered judgment by default against Capital One, which apparently did not appear to defend against the reformation claim.

2

The circuit court denied the motion without a hearing. The Daughtrys filed this timely appeal pursuant to § 12-303(3)(iii) of the Courts and Judicial Proceedings Article.

## DISCUSSION

**I. NO STATUTE OF LIMITATIONS APPLIES DIRECTLY TO MORTGAGE FORECLOSURES.**

"Foreclosure cases do not neatly fit the ordinary model of civil litigation[.]" *Huertas v. Ward*, ___ Md. App. ___, No. 2929, Sept. Term 2018, 2020 WL 6326657, at *5 (Oct. 27, 2020). "A foreclosure action under a power of sale 'is intended to be a summary, in rem proceeding,'" the "primary object of [which] is to determine the rights of all persons as to their interests in the subject property." *Huertas*, 2020 WL 6326657, at *5 (quoting *Wells Fargo Home Mortg. v. Neal*, 398 Md. 705, 726 (2007)). A foreclosure case is thus initiated not by filing a complaint, but by filing an "order to docket." *Huertas*, 2020 WL 6326657, at *5 (citing Md. Rule 14-207(a)(1)).

A borrower or other interested person may challenge the right to proceed with a foreclosure sale by filing a motion to stay the sale and dismiss the action pursuant to Rule 14-211. *Bates v. Cohn*, 417 Md. 309, 318 (2010). In such a motion, the borrower "petition[s] the court for injunctive relief, challenging 'the validity of the lien or . . . the right of the [lender] to foreclose in the pending action.'" *Id.* at 318-19 (quoting Md. Rule 14-211(a)(3)(B)); *see also Neal*, 398 Md. at 729 (stating that "an injunction under [the predecessor to Rule 14-211] to enjoin the foreclosure of a deed of trust entreats a trial court to exercise its equitable powers"). If no motion is filed, the sale may proceed, subject to later ratification by the court pursuant to Rules 14-215 and 14-305.

3

Here, the Daughtrys filed a timely motion to stay or dismiss the foreclosure sale initiated by the Substitute Trustees pursuant to Rule 14-211. The Daughtrys' primary contention was and is that the foreclosure sale is barred by the three-year statute of limitations in § 5-101 of the Courts and Judicial Proceedings Article. The crux of the Daughtrys' argument is that Chapter 592 of the 2014 Laws of Maryland exempted mortgage foreclosure actions from the 12-year statute of limitations contained in § 5-102 of the Courts and Judicial Proceedings Article and, in doing so, subjected such actions to the blanket three-year statute of limitations in § 5-101. Because the Substitute Trustees brought this foreclosure action more than three years after they defaulted on their loan, the Daughtrys argue, it is barred by the statute of limitations.

The Substitute Trustees respond that there has never been a statute of limitations applicable to mortgage foreclosures in Maryland and that Chapter 592 did not create one. Based on the plain language of the act, as confirmed by legislative history, we agree with the Substitute Trustees. In focusing on whether Chapter 592 exempted mortgage foreclosure actions from the 12-year statute of limitations, the Daughtrys overlook a more important question, which is whether such actions were ever subject to that statute of limitations—or any statute of limitations—in the first place. Because they were not, the exemption enacted by Chapter 592 had no effect on mortgage foreclosure actions.

In *Cunningham v. Davidoff*, the Court of Appeals held unequivocally that no statute of limitations applies to mortgage foreclosure actions in Maryland. 188 Md. 437, 442 (1947). The Daughtrys argue that *Cunningham* is no longer good law and point to three legal developments to support that contention: (1) the adoption of §§ 5-101 and 5-102 of

4

the Courts and Judicial Proceedings Article in 1973 as part of code revision; (2) the merger of law and equity in 1984; and (3) Chapter 592 of the 2014 Laws of Maryland. After discussing *Cunningham*, we will review those other developments, looking primarily to determine if any of them superseded the Court of Appeals' decision in *Cunningham* by applying a statute of limitations to mortgage foreclosure actions. We conclude that none of them did.

###### A. *Cunningham v. Davidoff*

In *Cunningham*, the Court of Appeals addressed "the legal status of a mortgage over twenty years old, upon which nothing has been paid on account of principal or interest since its execution." 188 Md. at 440. The mortgagor did not deny that he had not made payments on the mortgage, but argued that enforcement of the mortgage was time-barred. *Id.* at 439. The Court identified three possible time limitations that might apply: (1) statute of limitations; (2) laches; and (3) the "twenty year period which governs in actions at law, when the requisite elements are present, in the cases of prescriptive title." *Id.* at 440-41. First, the Court concluded that "[t]here is no Statute of Limitations in Maryland applicable to foreclosure of mortgages" because mortgage foreclosure is an equitable remedy. *Id.* at 442. Second, the Court observed that although ordinarily "[a]n equity court deals with stale claims through the doctrine of laches," that doctrine "is not applicable to proceedings brought to enforce an old or stale mortgage." *Id.* Mortgage foreclosures, the Court held, "are exceptions to usual equity proceedings regarding stale claims." *Id.* Third, the Court concluded that mortgages were subject to the presumption of payment applicable to actions at law—and by analogy in equity—if the "mortgage is over twenty years old" and there

5

has been no payment of principal or interest during that time.[4]  *Id.* at 442-43, 445.  Even that presumption, however, could be overcome by proof that the mortgage had not been satisfied, *id.* at 443-44, and if the presumption "is rebutted[,] there is no legal obstacle to the foreclosure of such a mortgage," *id.* at 445.

As of 1947, therefore, it was clear that no statute of limitations applied to mortgage foreclosure actions in Maryland.  We turn next to the developments the Daughtrys contend altered that established law.

**B.**    **The Adoption of §§ 5-101 and 5-102 of the Courts and Judicial Proceedings Article Did Not Apply a Statute of Limitations to Mortgage Foreclosure Actions.**

One of the first articles of the Maryland Code to emerge from the code revision process was the Courts and Judicial Proceedings Article, first enacted in 1973.  1973 Md. Laws First Special Session, ch. 2, § 1; *see* Hon. Alan M. Wilner, *Blame It on Nero:  Code Creation and Revision in Maryland* (1994), available at

---

[4] As the Court observed in *Cunningham*, this 20-year period originated in the Statute of James.  188 Md. at 442.  The Statute of James I, enacted by Parliament in 1623, "provided specific lengths of time for numerous real property and personal actions.  It explicitly tolled these limitation periods for infancy, insanity, imprisonment, coverture, and absence from the realm, but was silent concerning ignorance. This statute is the model for statutes of limitation adopted by American legislatures."  Gail L. Heriot, *A Study in the Choice of Form: Statutes of Limitation and the Doctrine of Laches*, 1992 B.Y.U. L. Rev. 917, 926 (1992).  The time limitations in the Statute of James I applied only to claims at law.  *Id.*  The specific limitation applicable to enforcement of mortgages was the 20-year period applicable to a cause of action seeking the right of entry.  *Cunningham*, 188 Md. at 442.

In 1959, the General Assembly enacted Article 66, § 30A of the Maryland Code, which codified a "presumption of payment" if "more than twenty years have elapsed since the maturity of the mortgage or deed of trust," rebuttable by proof of nonpayment.  As discussed further below, that statute, as subsequently amended, is currently codified in § 7-106(c) of the Real Property Article.

6

http://aomol.msa.maryland.gov/megafile/msa/speccol/sc2900/sc2908/html/history.html.

Included in that new article, as pertinent here, were §§ 5-101 and 5-102. Section 5-101, now and as originally enacted, establishes a three-year statute of limitations applicable to a "civil action at law" "unless another provision of the Code provides a different period of time within which an action shall be commenced." Section 5-102, now and as originally enacted, establishes a 12-year statute of limitations applicable to certain "specialties," including any "[p]romissory note or other instrument under seal" and any "[c]ontract under seal." Cts. & Jud. Proc. § 5-102(a)(1), (5).

From its inception, § 5-101 has been expressly limited in application to a "civil action at law." Foreclosure proceedings are not actions at law because they are "equitable in nature." *Neal*, 398 Md. at 728; *see also Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 309 (2007) ("Mortgage foreclosure is an equitable remedy in Maryland."). The plain language of the statute thus does not extend to mortgage foreclosure actions.

That plain language interpretation is confirmed by the legislative history of the provisions, as set forth by the Court of Appeals in *Tipton v. Partner's Management Company*, 364 Md. 419 (2001). In *Tipton*, the Court explored in some detail the derivation of §§ 5-101 and 5-102, based largely on the report of the Governor's Commission to Revise the Annotated Code (the "Commission") and revisor's notes included with the newly enacted provisions. The issue in *Tipton* concerned whether the General Assembly's adoption of §§ 5-101 and 5-102 had changed the statute of limitations applicable to actions seeking to recover back rent pursuant to leases that were under seal from three years to 12

7

years.[5]  *Id.* at 425.  The Court thus undertook to determine whether the General Assembly

had intended to alter that statute of limitations through the code revision process.

In reviewing the legislative history, the Court first examined § 1 of former Article

57, which was the predecessor to § 5-101.  *Tipton*, 364 Md. at 436-42.  With origins dating

back to 1715, Article 57, § 1 had established a three-year statute of limitations applicable

to a list of specific actions at law.[6]  *Tipton*, 364 Md. at 436.  The Commission believed,

however, that listing the actions to which the three-year statute applied had led to

confusion, in part because some of the listed causes of action were "either obsolete or

---

[5] Before the adoption of the new Courts and Judicial Proceedings Article, actions "brought to recover rent in arrear, reserved under any form of lease," were expressly included among a list of actions subject to the three-year statute of limitations.  *Tipton*, 364 Md. at 437 (quoting Md. Code Art. 57, § 1 (1957, 1972 Repl.)) (emphasis removed).  As explained below, in adopting § 5-101, the General Assembly abandoned the list of actions covered in favor of a blanket three-year limitations period applicable in the absence of any other specified limitations period.  In an argument that was the flip side of that posed by the Daughtrys, the appellees in *Tipton* argued that because actions to recover rent were no longer identified specifically as being subject to the three-year limitations period, such actions were subject to the 12-year statute of limitations in § 5-102 if they were based on "contracts under seal."  *Tipton*, 364 Md. at 427.

[6] The list of actions subject to the three-year statute of limitations, as it existed before code revision, included:

> All actions of account, actions of assumpsit, or on the case, except as hereinafter provided, actions of debt on simple contract, detinue or replevin, all actions for trespass for injuries to real or personal property, all actions for illegal arrest, false imprisonment, or violation of the twenty-third, twenty-sixth, thirty-first and thirty-second articles of the Declaration of Rights, or any of them, or of the existing, or any future provisions of the Code touching the writ of habeas corpus or proceedings thereunder, and all actions, whether of debt, ejectment or of any other description whatsoever, brought to recover rent in arrear, reserved under any form of lease, whether for ninety-nine years renewable forever, or for a greater or lesser period, and all distraints issued to recover such rent[.]

Md. Code, Art. 57, § 1 (1957, 1972 Repl.).

8

obscure" and in part because "some modern statutory causes of action which do not fit within the old forms of action" could inadvertently have been enacted without "specific statutes of limitation." *Tipton*, 364 Md. at 440 (quoting Commission Report at 41). The Commission determined that converting to "a blanket three year limitation" would help to "avoid confusion." *Id.* Notably, although the Commission acknowledged that the adoption of a blanket limitations period was a substantive change to existing law, it nonetheless believed that a three-year statute of limitations was in keeping with the longstanding intent of the General Assembly "to cover all causes of action existing in 1729 when this section was enacted, subject to certain exceptions." *Id.* at 441 (quoting revisor's note accompanying the original § 5-101). The Court thus concluded that the "clear intent" of the General Assembly in adopting § 5-101 was "to cover the causes of action that it had been the intent of the legislature to cover with Article 57 section 1, just in a more simplistic form." *Tipton*, 364 Md. at 441-42.

The Court also explored the General Assembly's intent in adopting the new § 5-102 to replace its predecessor, former Article 57, § 3, which had provided a list of specialties subject to a 12-year statute of limitations.[7] *See Tipton*, 364 Md. at 438, 444. The Court

---

[7] Before code revision, former Article 57, § 3 provided:

> No bill, testamentary, administration or other bond (except sheriffs' and constables' bonds), judgment, recognizance, statute merchant, or of the staple or other specialty whatsoever, except such as shall be taken for the use of the State, shall be good and pleadable, or admitted in evidence against any person in this State after the principal debtor and creditor have been both dead twelve years, or the debt or thing in action is above twelve years' standing; provided, however, that every payment of interest and every payment on the principal upon any single bill or other specialty shall suspend the operation of this section as to such bill or speciality for

9

observed that the Commission's report to the General Assembly stated explicitly that the proposed § 5-102 made no substantive changes to the scope of actions covered by the 12-year statute of limitations.[8]  *Id.* at 444.

The Court ultimately concluded that in adopting new §§ 5-101 and 5-102, the General Assembly had not intended to make any change to the limitations period applicable to actions to collect rent owed under leases, whether or not under seal.  *Id.*  In reaching that conclusion, the Court found it especially notable that while "[t]he Commission's report clearly establishes that any substantive changes would be explained in the report or in the revisor's notes," those sources contained no suggestion that the Commission had intended to alter the limitations period applicable to leases.  *Id.* at 444-45.

The Court's analysis of the legislative history in *Tipton* confirms that the General Assembly did not extend a statute of limitations to foreclosure actions.  First, in adopting § 5-101, the General Assembly did not intend to expand the scope of the three-year statute of limitations except to apply it to "some modern statutory causes of action which do not

---

three years after the date of such payment; saving to all persons who shall be under the aforementioned impediments of infancy or insanity of mind the full benefit of all such bills, bonds, judgments, recognizance, statute merchant, or of the staple or other specialties, for the period of six years after the removal of such disability.

Md. Code, Art. 57, § 3 (1957, 1972 Repl.).

[8] Although the Commission made no substantive changes to the 12-year statute of limitations applicable to specialties, it suggested that the General Assembly "may wish to consider whether there is any valid reason for having a longer limitations period simply because an instrument is executed under seal."  *Tipton*, 364 Md. at 444 (quoting Commission Report at 41-42).  The General Assembly has since amended § 5-102— including, as we will discuss, through Chapter 592 of the 2014 Laws of Maryland—but it has not abolished the 12-year limitations period applicable to most specialties.

10

fit within the old forms of action." *Id.* at 440 (quoting Commission Report at 41). That does not apply to equitable mortgage foreclosure actions, which are neither statutory nor of modern origin. Second, in adopting § 5-102, the General Assembly did not intend to expand the scope of the 12-year statute of limitations at all. Third, neither the Commission Report nor the revisor's notes identify any intent to effect a substantive change to Maryland law by extending a statute of limitations to mortgage foreclosure actions.

In sum, the adoption of §§ 5-101 and 5-102 in 1973 did not abrogate *Cunningham*.

### C. The Merger of Law and Equity Did Not Apply a Statute of Limitations to Mortgage Foreclosure Actions.

The Daughtrys also claim general support for their contentions from the merger of law and equity in 1984. In doing so, the Daughtrys misapprehend the effect of the merger.

The Court of Appeals merged law and equity in Maryland in 1984 by the adoption of Rule 2-301, which provides: "There shall be one form of action known as 'civil action.'" The Rules Committee note to Rule 2-301 states that the effect of the merger "is to eliminate distinctions between law and equity *for purposes of pleadings, parties, court sittings, and dockets.*" (Emphasis added). Accordingly, Rule 2-301 requires that all complaints, regardless of the form of relief sought, "take the same form," and provides that "demands for relief of all types may be combined into one complaint." Hon. Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 310 (5th ed. 2019). However, this does not mean that distinctions between actions at law and actions in equity have been abolished. To the contrary:

> While traditional equitable and legal relief remain available, as historically developed, relief from both traditions is now sought through

11

> a single action — a civil action. Of course, the historical nature of the claim is still important in determining what defenses may be asserted. For example, the merger of law and equity does not mean that laches may be asserted as a defense to a legal claim.

*Id.*; *see also, e.g.*, *Taylor v. Taylor*, 306 Md. 290, 297 n.6 (1986) (stating that although the merger abolished the distinction between different courts, "it does not avoid the occasional necessity of identifying the character and historical genesis of each claim for purposes of determining entitlement to jury trial, extent of jurisdiction, application of particular principles, or the like"); *Smith v. Gehring*, 64 Md. App. 359, 370-71 (1985) (stating that the merger of law and equity did not erase distinctions between legal and equitable defenses because the identified purposes for the change "do not extend to the elimination of distinctions between what defenses may be available to a legal claim as opposed to an equitable claim").

Notably for our purposes, the distinction between law and equity remains particularly relevant in identifying applicable defenses, including with respect to the differing application of statutes of limitations and laches. *See, e.g.*, *Spaw, LLC v. City of Annapolis*, 452 Md. 314, 360 (2017) ("Laches is an equitable defense asserting an inexcusable delay by the suitor in asserting its right without necessary reference to duration."); *Lamone v. Schlakman*, 451 Md. 468, 484 (2017) (declining to apply statute of limitations "[b]ecause the action [before us is] an equitable one" (quoting *Fraternal Order of Police v. Montgomery County*, 446 Md. 490, 509 (2016))); *State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 479 (2014) (applying laches to equitable claims seeking to halt redevelopment project); *Neal*, 398 Md. at 729 (holding that "the venerated equity

12

doctrine of clean hands . . . is applicable in foreclosure proceedings"); *Ross v. State Bd. of Elections*, 387 Md. 649, 668 (2005) (holding that a petition seeking to invalidate an election "is barred as a matter of law by the common law doctrine of laches"); *Ver Brycke v. Ver Brycke*, 379 Md. 669, 703 (2004) (holding that in distinguishing whether an action sounds in law or in equity for purposes of identifying the applicable limitations period, "the determination is dependent upon the remedies sought"); *Buxton v. Buxton*, 363 Md. 634, 645-46 (2001) (observing that although "there *is* a relationship between laches and the statute of limitations, . . . the statute does not govern" (emphasis in original)); *Schaeffer v. Anne Arundel County*, 338 Md. 75, 81 (1995) (applying laches in determining whether to enjoin an ordinance); *Mitchell v. Yacko*, 232 Md. App. 624, 641 (2017) (applying the clean hands doctrine in "hold[ing] that a party cannot institute a foreclosure upon forged documents"); *LaSalle Bank v. Reeves*, 173 Md. App. 392, 405 (2007) (holding that "despite the merger of law and equity, the doctrine of laches is very much alive, and that statutes of limitations serve, generally, as a guideline to the application of laches, rather than as a complete abrogation of the doctrine").

The Daughtrys suggest that we should read the Court of Appeals' pre-merger decision in *Cunningham* as limited to holding that the statute of limitations could not be raised in an equity court, and that it therefore no longer applies because "Maryland no longer has equity courts." As we have discussed, however, the decision in *Cunningham* was not so limited and the merger of law and equity did not erase distinctions between defenses to actions sounding at law and those sounding in equity.

13

The merger of law and equity therefore did not effect any change in the defenses applicable to a mortgage foreclosure action and, therefore, did not supersede *Cunningham*.

**D.    Chapter 592 of the 2014 Laws of Maryland Did Not Apply a Statute of Limitations to Mortgage Foreclosure Actions.**

The Daughtrys have not called our attention to any other legal development between 1947 and 2014 that would have extended a statute of limitations to mortgage foreclosure actions, nor have we identified any.  That brings us to Chapter 592 of the 2014 Laws of Maryland, on which the Daughtrys primarily rely.  The Daughtrys contend that Chapter 592 carved mortgage foreclosure actions out of the 12-year statute of limitations in § 5-102, thereby necessarily subjecting them to the three-year blanket statute of limitations in § 5-101.  A fatal flaw in their argument, however, is that the 12-year statute of limitations never applied to mortgage foreclosure actions in the first place.  For that reason alone, the Daughtrys' contention fails.  Nonetheless, we will proceed to address the Daughtrys' more specific arguments about Chapter 592.

### 1.    *Statutory Construction*

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the General Assembly." *Bellard v. State*, 452 Md. 467, 481 (2017) (quoting *Wagner v. State*, 445 Md. 404, 417 (2015)).  "[T]o determine [the General Assembly's] purpose or policy, we look first to the language of the statute, giving it its natural and ordinary meaning. We do so on the tacit theory that the General Assembly is presumed to have meant what it said and said what it meant." *Peterson v. State*, 467 Md. 713, 727 (2020) (quoting *Bellard*, 452 Md. at 481).  In interpreting a statute's plain language, we must "read

14

the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Berry v. Queen*, 469 Md. 674, 687 (2020) (quoting *Brown v. State*, 454 Md. 546, 551 (2017)). In doing so, "[o]ur inquiry is not confined to the specific statutory provision at issue on appeal. Instead, '[t]he plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim or policy of the Legislature in enacting the statute.'" *Berry*, 469 Md. at 687 (internal citation and some quotation marks omitted) (quoting *Johnson v. State*, 467 Md. 362, 372 (2020)).

The Court of Appeals recently has used different formulations to describe how a statutory construction analysis should proceed if the plain language of a statute is unambiguous. One formulation is:

> When the statutory language is clear, we need not look beyond the statutory language to determine the General Assembly's intent. If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written. . . . If there is no ambiguity in the language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends.

*Peterson*, 467 Md. at 727 (quoting *Bellard*, 452 Md. at 481 (in turn, quoting *Wagner*, 445 Md. at 417-19 (in turn, quoting *Stoddard v. State*, 395 Md. 653, 661-63 (2006))))).

In other formulations, the Court has observed that "[w]hile not necessary in every instance, we often find it prudent to scrutinize the legislative history to confirm that our interpretation of the statute's plain language accords with the legislature's intent." *Berry*, 469 Md. at 687-88 (citing *Neal v. Baltimore City Bd. of Sch. Comm'rs*, 467 Md. 399, 415-16 (2020) and *In re S.K.*, 466 Md. 31, 50 (2019)); *see also Aleman v. State*, 469 Md. 397,

15

421 (2020) (in describing statutory construction generally, stating that after examining statutory text, a court will "typically review the legislative history to confirm conclusions or resolve ambiguities").

Although these formulations may at first blush seem contradictory, we think they are reconcilable according to the following principles: (1) faced with a truly unambiguous statute,[9] a court is neither required to consider, nor prohibited from considering, legislative history;[10] and (2) whether to consider legislative history to confirm a court's interpretation of a truly unambiguous statute is left to the discretion of the court. Factors that may affect the court's decision to review legislative history may include the relative degree of clarity of the language; the relative degree of clarity of the legislative purpose; the degree to which the plain language interpretation promotes the apparent legislative purpose, as opposed to merely does not conflict with it; whether any of the parties have called the court's attention

---

[9] We use the phrase "truly unambiguous statute" to emphasize that some statutes that might initially appear to be unambiguous are, in fact, ambiguous when considered in the context of the statute as a whole, the broader statutory scheme, or the apparent "purpose, aim or policy of the Legislature in enacting the statute." *Berry*, 469 Md. at 687 (quoting *Johnson*, 467 Md. at 372).

[10] Most of the Court's formulations of statutory construction analysis that discuss the use of legislative history in construing unambiguous statutes identify the purpose of doing so as "to confirm" the Court's interpretation of the plain meaning. *See, e.g.*, *Blackstone v. Sharma,* 461 Md. 87, 113 (2018) ("Even in instances 'when the language is unambiguous, it is useful to review legislative history of the statute to confirm that interpretation and to eliminate another version of legislative intent alleged to be latent in the language.'" (quoting *State v. Roshchin*, 446 Md. 128, 140 (2016))). In general, the cases do not say what happens if the legislative history contradicts, rather than confirms, the plain meaning of the statute. In *Kaczorowski v. Mayor & City Council of Baltimore*, 309 Md. 505 (1987), however, the Court rejected the unambiguous, plain language interpretation of the statute in deference to the equally unambiguous legislative history that demonstrated a legislative mistake. *Id.* at 520.

16

to allegedly contradictory legislative history; the novelty or importance of the question; and logic and common sense.

## 2.    *Chapter 592 of the 2014 Laws of Maryland*

Chapter 592 contains seven sections:

- Section 1 amended § 5-102 of the Courts and Judicial Proceedings Article, which established a 12-year statute of limitations for certain specialties, including promissory notes and contracts made "under seal," to exempt from the 12-year statute of limitations "[a] deed of trust, mortgage, or promissory note that has been signed under seal and secures or is secured by owner-occupied residential property, as defined in § 7-105.1 of the Real Property Article."

- Section 2 added § 7-105.13 of the Real Property Article[11] to:

    - (1) permit "a secured party or an appropriate party in interest," after final ratification of the auditor's report following a foreclosure sale of owner-occupied residential property, to "file a motion for a deficiency judgment if the proceeds of the sale, after deducting all costs and expenses allowed by the court, are insufficient to satisfy the debt";

    - (2) require that any motion for a deficiency judgment "be filed within 3 years after the final ratification of the auditor's report"; and

    - (3) make a motion for a deficiency judgment "the sole post-ratification remedy available to a secured party or party in interest for breach of a covenant contained in a deed of trust, mortgage, or promissory note that secures or is secured by owner-occupied residential property."

- Section 3, which is uncodified, provided that § 1 "shall be construed to apply prospectively to any cause of action that arises on or after the effective date of this Act," except as provided in § 4.

- Section 4, which is uncodified, provided "that any cause of action to collect the unpaid balance due on a deed of trust, mortgage, or promissory note that

---

[11] This section was renumbered as Real Property § 7-105.17 by Chapter 93 of the 2019 Laws of Maryland.

has been signed under seal and secures or is secured by residential property that was owner-occupied residential property at the time the property was transferred with the unpaid balance that arises before July 1, 2014" and was not already time-barred "must be filed within 12 years after the date the action accrues or before July 1, 2017, whichever occurs first."

- Section 5, which is uncodified, provided that § 2 was "to apply prospectively to any motion for a deficiency judgment that is filed on or after the effective date of this Act," except as provided in § 6.

- Section 6, which is uncodified, provided that any motion for a deficiency judgment in a case where an auditor's report received final ratification before July 1, 2014 and was not already time-barred "must be filed within 3 years after the date of final ratification or before July 1, 2017, whichever occurs first."

- Section 7, which is uncodified, establishes July 1, 2014 as the effective date of the Act.

### 3. *Plain Language Analysis of Chapter 592*

The Daughtrys argue that the Substitute Trustees' foreclosure action is time-barred because of §§ 1 and 4 of Chapter 592. We will address each in turn. At the outset, we observe that nowhere in either of those sections is there any mention of a period of limitations applicable to mortgage foreclosure actions. If the General Assembly had intended to impose a statute of limitations on mortgage foreclosure actions for the first time—and, in doing so, to overrule a six-decade-old Court of Appeals precedent that was directly on point—we would expect it to do so explicitly. *See Breslin v. Powell*, 421 Md. 266, 287 (2011) ("[I]t is not to be presumed that the [L]egislature . . . intended to make any alteration in the common law other than what has been specified and plainly pronounced." (quoting *Walzer v. Osborne*, 395 Md. 563, 573-74 (2006))); *Romm v. Flax*, 340 Md. 690, 698 (1995) ("We presume that the legislature is aware of our decisions . . . and construe enactments in derogation of the common law strictly.").

Section 1 of Chapter 592 amended § 5-102 of the Courts and Judicial Proceedings Article by adding a new § 5-102(c)(2), which provides that "[t]his section does not apply to . . . [a] deed of trust, mortgage, or promissory note that has been signed under seal and secures or is secured by owner-occupied residential property, as defined in § 7-105.1 of the Real Property Article." The Daughtrys' argument that this language subjects owner-occupied residential mortgage foreclosure actions to the three-year statute of limitations in § 5-101 follows a fairly straightforward analysis. They reason that: (1) mortgage foreclosure actions are actions to enforce a deed of trust or mortgage; (2) such actions are, therefore, now excluded from the scope of § 5-102; and (3) in the absence of any other applicable statute of limitations, they are now subject to the blanket limitations period established by § 5-101.

The Daughtrys' argument misses the mark in several respects. As we have already observed, before Chapter 592 became effective, mortgage foreclosure actions were not subject to any statute of limitations, including the 12-year statute of limitations on specialties in § 5-102. *See Cunningham*, 188 Md. at 442; *Van Wagoner v. Nash*, 187 Md. 410, 413-14 (1947) (expressly rejecting the application of the 12-year statute of limitations in former Article 57 § 3, the precursor to § 5-102, to mortgage foreclosures). A provision exempting mortgage foreclosure actions from a statute of limitations to which they were never subject merely confirms what the common law already provided: such actions are not subject to a 12-year statute of limitations.

Moreover, even accepting for purposes of this analysis that § 5-102(c)(2) would preclude application of the 12-year statute of limitations to mortgage foreclosure actions,

that would not by itself subject such actions to the three-year statute of limitations in § 5-101.  As previously noted, § 5-101, by its express terms, applies only to a "civil action at law," and a mortgage foreclosure action sounds in equity, not at law.  *See Hill*, 402 Md. at 309.  The plain language of § 5-101 thus precludes any direct application to mortgage foreclosure actions.

Furthermore, to the extent the Daughtrys imply that their interpretation of the scope of § 5-102(c)(2) must be accepted to give that provision meaning, we disagree.  Before Chapter 592 became effective, a mortgagee had the right to seek recovery of a deficiency that remained after a foreclosure sale in two ways.  First, a mortgagee could seek a deficiency judgment within a foreclosure action.  *See* Md. Rule 14-208(b) (2008).  Second, a mortgagee could file an "action at law . . . to enforce either the Note or the Deed of Trust [or a mortgage], as contracts, and to obtain a remedy at law—monetary damages." *Wellington Co., Inc. Profit Sharing Plan & Tr. v. Shakiba*, 180 Md. App. 576, 591 (2008).[12] Although a motion for a deficiency judgment pursued within a foreclosure proceeding was subject to a three-year limitations period, *see* Md. Rule 14-208(b) (2008), a breach of contract action seeking such a judgment, if based on an instrument under seal, was subject to the 12-year statute of limitations in § 5-102,[13] *see Wellington Co.*, 180 Md. App. at

---

[12] A breach of contract action could be filed to enforce the terms of a promissory note, deed of trust, or mortgage, regardless of whether it was preceded by a foreclosure sale. *See Wellington Co.*, 180 Md. App. at 597 (observing that the statutory authorization to pursue a deficiency decree within a foreclosure action "did not abrogate common law remedies that already existed, such as the power of the obligee of a debt instrument to bring an action at law against the obligor to recover money damages").

[13] In reaching our conclusion in *Wellington Co.* that a breach of contract action to enforce a deed of trust under seal was subject to the 12-year statute of limitations, we

592-601; *see also County Tr. Co. v. Harrington*, 168 Md. 101, 104 (1935) (barring an action to collect the balance remaining on a mortgage brought more than 12 years after default under Article 57, § 3). Thus, because mortgages and deeds of trust are generally made under seal, a claim to recover a deficiency judgment could nearly always be pursued outside of the foreclosure action for 12 years following the sale. As a result of Chapter 592, however, an action at law to enforce an obligation evidenced by a promissory note, deed of trust, or mortgage on owner-occupied residential property is now subject to the three-year statute of limitations in § 5-101.[14]

In addition to the codified provisions of Chapter 592, the General Assembly enacted four substantive uncodified provisions, two of which concern the exclusion effected by § 1.[15] Section 3 of Chapter 592 provides: "That, except as provided in Section 4 of this

---

stressed at the outset of our analysis that the action at issue "d[id] not involve a foreclosure proceeding or other equitable action." 180 Md. App. at 591.

[14] Section 2 of Chapter 592 enacted a new provision, § 7-105.13 (now codified at § 7-105.17) of the Real Property Article (2015 Repl.; 2020 Supp.), which made a motion for a deficiency judgment filed within the foreclosure action and within three years of final ratification of the auditor's report the exclusive post-foreclosure remedy for a foreclosing party. That provision did not, however, preclude a secured party from pursuing an action at law in the absence of a foreclosure. By subjecting such actions to the three-year statute of limitations in § 5-101, Chapter 592 thus abrogated in part our decision in *Wellington Co.*

[15] In combination, these provisions appear to be intended to extend the effect of the statutory changes to existing causes of action to the extent possible in light of established law that the General Assembly may not retroactively apply a shortened statute of limitations so as to bar claims that have already accrued, but that it may reduce a limitations period for such claims "so long as a reasonable period following the effective date of the legislation is provided within which to assert pre-existing claims." *Geisz v. Greater Baltimore Med. Ctr.*, 313 Md. 301, 320 (1988).

21

Act, Section 1 of this Act shall be construed to apply prospectively to any cause of action that arises on or after the effective date of this Act." In turn, § 4 provides:

> That any cause of action to collect the unpaid balance due on a deed of trust, mortgage, or promissory note that has been signed under seal and secures or is secured by residential property that was owner-occupied residential property at the time the property was transferred with the unpaid balance that arises before July 1, 2014, and would not be barred under § 5-102 of the Courts and Judicial Proceedings Article before July 1, 2014, must be filed within 12 years after the date the action accrues or before July 1, 2017, whichever occurs first.

The Daughtrys, focusing on the language "any cause of action" in both sections, argue that this suggests an intent to apply the applicable limitations period to all causes of action, and not only to actions at law. With respect to § 3, however, "any cause of action" refers only to those causes of action that are addressed by § 1 of the Act—i.e., causes of action that are excluded from the scope of the 12-year statute of limitations by virtue of new § 5-102(c)(2). And § 4 applies only to "any cause of action to collect the unpaid balance due . . . at the time the property was transferred with the unpaid balance." That language unambiguously refers to post-transfer causes of action—i.e., post-foreclosure actions—not foreclosure actions themselves.[16] Section 4 thus provides the Daughtrys no

---

[16] At oral argument, the Daughtrys posited that the language "at the time the property was transferred" was not intended to refer to a transfer resulting from a foreclosure sale, but to the initial transfer of a property to the borrower at the time a loan is made. At the time of initial transfer, however, there is generally no "unpaid balance due." Instead, the balance comes due in installments over time. The Daughtrys' proposed interpretation would require a lender to commence a collection action within three years of the issuance of a loan, regardless of whether any default has occurred or will occur. We reject that illogical interpretation of the statute. *See Breslin*, 421 Md. at 287.

aid.[17]

Another statutory provision provides additional context for our plain language analysis. *See Johnson*, 467 Md. at 372 ("The plain language 'must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim or policy of the Legislature in enacting the statute.'" (quoting *State v. Johnson*, 415 Md. 413, 421 (2010))). The Substitute Trustees direct our attention to § 7-106(c) of the Real Property Article, which creates a presumption that an unreleased mortgage or deed of trust has been paid after certain periods have elapsed: (1) 12 years after the last payment date provided in the instrument or the instrument's maturity date; (2) 40 years after the date of record of the instrument, if there is no last payment date or maturity date; or (3) if a continuation statement has been recorded, 12 years after the last continuation statement. Real Prop. § 7-106(c)(1).[18] If no action has been brought to enforce a mortgage or deed of trust before the expiration of these timeframes, "the lien created by the mortgage or deed of trust shall terminate, no longer be enforceable against the property, and shall be extinguished as a lien against the property." *Id.* § 7-106(c)(2); *see also Helman v. Kim*, 130 Md. App. 181, 188

---

[17] Uncodified §§ 5 and 6 of Chapter 592 relate to the application of § 2 in the same way that §§ 3 and 4 relate to the application of § 1. They are thus addressed only to post-foreclosure deficiency judgments.

[18] As mentioned in footnote 4, the predecessor to § 7-106(c), as originally enacted in 1959, provided a rebuttable presumption of payment if more than 20 years had passed since the date of the maturity of the instrument or date of last payment called for in the instrument. *See* Article 66, § 30A (1959). That statute, as originally enacted, was nearly identical to the common-law rule stated in *Cunningham*. *See* 188 Md. at 446-47. Subsequent amendments have shortened the applicable time period but changed the presumption from rebuttable to conclusive. *See Helman v. Kim*, 130 Md. App. 181, 186 (2000).

(2000). As the Substitute Trustees point out, the Daughtrys' contentions would render § 7-106(c) effectively superfluous, as the statute of limitations would bar enforcement of a lien long before any of the timeframes provided in § 7-106(c) would pass. That, of course, is a result we strive to avoid. *See Whiting-Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 302 (2001) ("[S]tatutes on the same subject are to be read together and harmonized to the extent possible, reading them so as to avoid rendering either of them, or 'any portion, meaningless, surplusage, superfluous or nugatory.'" (quoting *Gov't Emps. Ins. Co. v. Ins. Comm'r*, 332 Md. 124, 132 (1993))).

In summary, we conclude that the plain language of Chapter 592, read in conjunction with § 5-101, does not extend a three-year statute of limitations to mortgage foreclosure actions. Exercising our discretion, we turn next to the legislative history of Chapter 592 to confirm that interpretation.

### 4. *Legislative History Analysis of Chapter 592*

The legislative history of Chapter 592 confirms our plain language interpretation. The bills that became Chapter 592 were cross-filed as Senate Bill 708 and House Bill 274. The largely overlapping legislative bill files reflect (1) no mention of applying a statute of limitations to mortgage foreclosure actions and (2) an exclusive focus on reducing the statute of limitations applicable to post-foreclosure deficiency judgments. For example, the Floor Reports and Fiscal and Policy Notes[19] in both chambers identify the issue the

---

[19] In analyzing a statute, Floor Reports often serve as "key legislative history documents." *Hayden v. Md. Dep't of Nat. Res.*, 242 Md. App. 505, 530 (2019) (quoting *Blackstone*, 461 Md. at 130); *see also* Jack Schwartz & Amanda Stakem Conn, *The Court of Appeals at the Cocktail Party: The Use and Misuse of Legislative History*, 54 Md. L.

bills sought to address: "In Maryland, debt collectors may have as long as 36 years to pursue a judgment after a foreclosure." [20] Floor Report, S.B. 708 at 3; Floor Report, H.B. 274 at 2; S.B. 708, 2014 Leg., Reg. Sess. (Md. 2014), Fiscal and Policy Note, at 3; H.B. 274, 2014 Leg., Reg. Sess. (Md. 2014), Fiscal and Policy Note, at 3. The same reports and notes also relay that the Maryland Consumer Rights Coalition had "estimate[d] that, since 2008, at least 400 deficiency collection cases have been pursued in Maryland[.]" *Id.*

The bill files also contain written testimony and numerous other submissions focusing almost exclusively on problems arising from the application of the 12-year statute of limitations to deficiency judgments. For example, in support of the bill, the Legal Aid Bureau's Foreclosure Legal Assistance Project wrote that "deficiency judgments . . . [were] currently sentencing families to crippling, long term debt that will haunt them and the overall economy for years to come," and that "[a] limit on the time for pursuing a deficiency judgment will help foreclosed homeowners move on with their lives more quickly." Bill File for S.B. 708 at 57-58. The late Representative Elijah Cummings wrote that shortening the statute of limitations applicable to deficiency judgments "would provide adequate time for a lender to seek a deficiency judgment while also ensuring that

---

Rev. 432 (1995) (identifying floor reports and fiscal notes as potentially important sources of legislative history).

[20] The reference to "36 years" in the Floor Reports takes into account: (1) the 12-year limitations period to file an action on a specialty; (2) the 12-year limitations period to enforce any judgment obtained through that action, *see* Cts. & Jud. Proc. § 5-102(a)(3); Md. Rule 2-625; and (3) the possibility of renewal of the 12-year limitations period to enforce such a judgment, *see* Md. Rule 2-625 ("At any time before expiration of the judgment, the judgment holder may file a notice of renewal and the clerk shall enter the judgment renewed."). Floor Report, S.B. 708 at 3; Floor Report, H.B. 274 at 2.

homeowners quickly understand the amount of additional money they may owe." Bill File for H.B. 274 at 13. And Neighborhood Housing Services of Baltimore argued that the 12-year statute of limitations for deficiency judgments "is far too long and can cause hardship for families far into the future." Bill File for S.B. 708 at 37. None of the materials submitted in support of Chapter 592 advocate for or discuss the imposition of a limitations period on mortgage foreclosure actions.

It is also notable that the General Assembly's focus on the limitations period applicable to post-foreclosure deficiency judgments, rather than mortgage foreclosure actions, is in accord with its general goal since the beginning of the Great Recession of "slowing down the foreclosure process to provide opportunities for homeowners to avoid foreclosure." *Maddox v. Cohn*, 424 Md. 379, 387 (2012); *see also id.* at 392-93 ("It is clear that the legislative process relating to mortgage foreclosures of the last several years has been designed to slow down the mortgage foreclosure practices[.]").[21]

Finally, the Daughtrys contend that the drafting history of § 4 of Chapter 592 demonstrates that the General Assembly did not intend to limit its application only to deficiency judgments. That drafting history is reflected in the attached paragraph, in which strikeouts reflect language in the original proposed bill that was removed and underlining reflects language that was added during the legislative process:

---

[21] In their brief, the Daughtrys take issue with certain statements of the circuit court, which they characterize as elevating the court's policy choice over that of the General Assembly. We see the circuit court's comments differently. The court was simply using its knowledge of the General Assembly's policy preferences—and the perverse consequences that might follow from adopting the Daughtrys' interpretation of the statute—as an aid to the court's interpretation of the statute.

That any cause of action ~~for a deficiency judgment~~ <u>to collect the unpaid balance due</u> on a deed of trust, mortgage, or promissory note that has been signed under seal ~~by a mortgagor~~ and secures or is secured by residential property that was owner-occupied residential property at the time the ~~order to docket or complaint to foreclose was filed that accrues~~ <u>property was transferred with the unpaid balance that arises</u> before July 1, 2014, and would not be barred under ~~Section~~ <u>§</u> 5-102 of the Courts and Judicial Proceedings Article before July 1, 2014, must be filed within 12 years after the date the action accrues or before July 1, ~~2016~~ <u>2017</u>, whichever occurs first.

The Daughtrys contend that by deleting the limiting language "for a deficiency judgment," the General Assembly evidenced its intention that § 4 apply to mortgage foreclosure actions themselves, and not only to actions to collect deficiency judgments. That argument, however, fails to recognize that at the same time the General Assembly deleted the phrase "for a deficiency judgment," it added the following qualifying language: "at the time the property was transferred with the unpaid balance." That language, as discussed above, unambiguously limits the provision to post-foreclosure actions.[22]

In sum, legislative history provides strong confirmation that the General Assembly's intent in enacting Chapter 592 was not to impose a statute of limitations on mortgage foreclosure actions. Instead, the legislative intent was to reduce the limitations period applicable to actions at law seeking money judgments to enforce a promissory note, deed

---

[22] The House of Delegates added the uncodified provisions to its version of the bill that became Chapter 592 by amendment. An "Explanation of Concurrence Message" included in the Senate's Bill File to explain the Senate's adoption of that change states that the House "add[ed] uncodified language providing for the application of the Act to causes of action that arose before the effective date." Bill File for S.B. 708 at 4. This statement supports our interpretation that the intent of § 4 was not to expand the scope of the act beyond the change made in § 1, but instead to apply that change, to the extent possible, to causes of action that arose before the effective date.

of trust, or mortgage, including, most importantly, deficiency judgments. Because the General Assembly, in spite of legislating extensively in the area of mortgage foreclosures over the last decade-and-a-half,[23] has not enacted a statute of limitations applicable to mortgage foreclosure actions, *Cunningham* remains good law. The circuit court was correct not to apply a statute of limitations to the Substitute Trustees' foreclosure action.[24]

## II. NO STATUTE OF LIMITATIONS APPLIES TO MORTGAGE FORECLOSURE ACTIONS BY ANALOGY.

As a back-up argument, the Daughtrys contend that even if § 5-101 does not apply expressly to foreclosure actions, we should nonetheless apply it because "equity courts will follow, by analogy, the period of limitations applicable to actions at law." (Quoting *Desser v. Woods*, 266 Md. 696, 704 (1972)).

---

[23] "[B]eginning in 2008 with Chapters 1 and 2 of the Acts of 2008 and continuing with Chapter 36, Section 6, and Chapters 149, 691 and 692 of the Acts of 2009, as well as Chapter 485 of the Acts of 2010, and Chapters 36, 37, 65, 245, 246, 355, 477, and 478 of the Acts of 2011, [the General Assembly] has created exhaustive and extensive processes, such as mediation, waiting periods and the like relating to additional duties that lenders have before or during the foreclosure process."

*Maddox*, 424 Md. at 387. Since *Maddox* was decided, numerous additional bills regulating foreclosure have been enacted, including but not limited to Chapter 156 of the Acts of 2012, Chapter 233 of the Acts of 2014, Chapter 617 of the Acts of 2017, and Chapters 93 and 522 of the Acts of 2019.

[24] The Daughtrys also claim support for their arguments from Chapter 579 of the 2016 Laws of Maryland, which, as relevant here, prohibits a creditor from "initiat[ing] a consumer debt collection action after the expiration of the statute of limitations applicable to the consumer debt collection action." Chapter 579 does not purport to create a statute of limitations applicable to mortgage foreclosure actions or any other actions. Instead, that act makes it a violation of state law to initiate any consumer debt collection action after an otherwise-applicable statute of limitations has expired. In light of our conclusion that no statute of limitations applies to mortgage foreclosure actions, Chapter 579 is inapposite.

Historically, statutes of limitations apply to "actions at law," *Murray v. Midland Funding, LLC*, 233 Md. App. 254, 259 (2017), as distinct from actions sounding in equity, which, as discussed above, "are potentially subject to laches." *Id.* at 260; *see also Cunningham*, 188 Md. at 442. Statutes of limitations and laches have different roots. "Statutes of limitations are designed to balance the competing interests of plaintiffs, defendants, and the public." *Ceccone v. Carroll Home Servs., LLC*, 454 Md. 680, 691 (2017). They "represent[] a policy judgment by the Legislature" balancing "the interest of a plaintiff in having adequate time to investigate a cause of action and file suit, the interest of a defendant in having certainty . . ., and the general interest of society in judicial economy." *Id.* The expiration of a statute of limitations thus bars a cause of action that was subject to it.

Laches, on the other hand, "is based upon grounds of sound public policy by discouraging fusty demands for the peace of society." *Ross v. State Bd. of Elections*, 387 Md. 649, 668 (2005) (quoting *Parker v. Bd. of Election Supervisors*, 230 Md. 126, 130 (1962)). The Court of Appeals has "consistently . . . adhered to the principle that '[t]here is no inflexible rule as to what constitutes, or what does not constitute, laches[.]" *Ross*, 387 Md. at 668-69 (quoting *Parker*, 230 Md. at 130). Unlike a statute of limitations, for laches to apply, the party asserting the defense must prove that "there is an unreasonable delay in the assertion of one's rights and that delay results in prejudice to the opposing party." *State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 586 (2014) (quoting *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 117 (2000)).

29

Statutes of limitations have been utilized historically in two different ways in connection with equitable claims. First, to ensure consistent treatment of causes of action over which the law and equity courts had concurrent jurisdiction, Maryland courts directly applied statutes of limitations applicable to actions at law to analogous actions in equity. As this Court summarized the doctrine, although a statute of limitations "[wa]s not *per se* applicable to actions in equity,"

> if there is an action at law analogous to the case before it, a court of equity will apply the statute of limitations applicable to that analogous legal action. *Desser v. Woods*, 266 Md. 696 (1972); *Rettaliata v. Sullivan*, 208 Md. 617 (1956); *Brashears v. Collision*, 207 Md. 339 (1955). And if that analogous legal action would have been barred, the equity action will also be barred by the mere lapse of time, without the necessity for a showing of prejudice. *Rockshire Civic Ass'n, Inc. v. Mayor and Council of Rockville Planning Comm'n*, 32 Md. App. 22 (1976); *see Kaliopulus v. Lumm*, 155 Md. 30 (1928).

*Villarreal v. Glacken*, 63 Md. App. 114, 127-28 (1985). Thus, "[t]he Statute of Limitations, in cases where it applies, c[ould] be raised by demurrer as a defense to a bill in equity." *Grandberg v. Bernard*, 184 Md. 608, 613 (1945). The rationale for the rule was that otherwise "a litigant could circumvent the statute by by-passing the law courts and bring his case in equity." *Id.* at 611. Thus, the principle that "equity will follow the law and bar the action" in such circumstances "has been the settled law of this State." *Id.*

Second, in applying the equitable doctrine of laches, Maryland courts have long looked to statutes of limitations applicable to analogous claims at law as a guide. *See, e.g.*, *Boucher v. Shomber*, 65 Md. App. 470, 481 (1985) ("It is well settled that an equity court will apply the equitable doctrine of laches in a manner consistent with an analogous statute of limitations at law."). In recent cases, our appellate courts have chosen this approach

over a direct application of the statute of limitations to claims sounding in equity. *See, e.g.*, *Fraternal Order of Police v. Montgomery County*, 446 Md. 490, 509 (2016) (stating that "laches, rather than direct application of the statutory time period, was the proper focus" for an equitable election law action); *State Ctr.*, 438 Md. at 604-05 (using a three-year statute of limitations "as a guideline" for the application of laches in an action in equity); *Ross*, 387 Md. at 670 (although recognizing that "generally courts sitting in equity will apply statutory time limitations," concluding that "courts are free, if the equities so require, to assess the facts of a purely equitable action independent of a statutory time limitation applicable at law," and applying laches); *LaSalle Bank v. Reeves*, 173 Md. App. 392, 407 (2007) (holding that "despite the merger of law and equity, the doctrine of laches is very much alive, and that statutes of limitations serve, generally, as a guideline to the application of laches, rather than as a complete abrogation of the doctrine"); *Jahnigen v. Smith*, 143 Md. App. 547, 555-56 (2002) ("Because the doctrine of laches is tied to the statute of limitations, 'generally the statute applicable to actions at law will be followed by analogy by the equity courts.'" (quoting *Bowie v. Ford*, 269 Md. 111, 122-23 (1973))).

Notably, when the statute of limitations is used only as a guide, courts are not "irrevocably bound" by those time periods and continue to consider whether the plaintiff's delay was unreasonable and whether it resulted in prejudice to the defendant. *See Ross*, 387 Md. at 670; *see also, e.g.*, *Schaeffer v. Anne Arundel County*, 338 Md. 75, 83 (1995) (looking to an analogous statute of limitation as a guide for the application of laches is unlike the direct application "of limitations in an action seeking a legal remedy," because laches "must be evaluated on a case by case basis, as laches is an inexcusable delay, without

necessary reference to duration in asserting an equitable claim," and also requires prejudice); *LaSalle Bank*, 173 Md. App. at 408 ("[S]tatutory limits are used as a guide in applying the doctrine of laches to equitable claims, but courts evaluating such claims are not irrevocably bound to such limits."); *Jahnigen*, 143 Md. App. at 555 (stating that "[c]ourts apply laches depending upon the unique circumstances of each case").

Here, the Daughtrys argue for application of the statute of limitations in § 5-101 only directly (by analogy), and not as a guide for the application of laches, as they concede that they did not establish the prerequisites for laches.[25] However, *Cunningham* forecloses that argument in two ways. First, the Court held that *no* statute of limitations applied to a mortgage foreclosure action, by analogy or otherwise. As we have discussed, no subsequent development superseded that holding. Second, the Court determined that the "time of limitations" that is applicable by analogy to a mortgage foreclosure action is not a statute of limitations, but the period that gives rise to the presumption of payment applicable to prescriptive title. *Cunningham*, 188 Md. at 440-41. For that reason as well, the circuit court was thus correct to decline to apply the three-year statute of limitations in § 5-101 of the Courts and Judicial Proceedings Article by analogy to this foreclosure action.

---

[25] Although the facts here may support a claim for undue delay in the filing of foreclosure proceedings, the Daughtrys have not suggested that they suffered any prejudice as a result of the delay, presumably because they have remained in possession of the Property.

**III.** **THE CIRCUIT COURT DID NOT ERR IN DENYING THE MOTION TO DISMISS BASED ON RES JUDICATA.**

The Daughtrys also argue in the alternative that the Substitute Trustees' foreclosure action is barred by res judicata or collateral estoppel because it could have been brought as part of the earlier action by the Substitute Trustees' predecessor in interest to reform the subordination agreement. Because the cause of action in the prior case was not the same as the cause of action in this case, we disagree with the Daughtrys and will affirm the circuit court.

> Res judicata is an affirmative defense that precludes the same parties from relitigating any suit based upon the same cause of action because the second suit involves a judgment that is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit.

*Bank of New York Mellon v. Georg*, 456 Md. 616, 625 (2017) (quoting *Powell v. Breslin*, 430 Md. 52, 63 (2013)). The elements of res judicata are: (1) the parties in the current action must be "the same or in privity with the parties to the earlier action"; (2) "the claim in the current action [must be] identical to the one in the prior adjudication"; and (3) there must have been "a final judgment on the merits in the previous action." *Georg*, 456 Md. at 625 (quoting *Powell*, 430 Md. at 63-64).

The focus of the dispute here is on the second element. The Substitute Trustees contend that the prior action for correction of the subordination agreement is not identical to the current foreclosure action. The Daughtrys respond that res judicata applies not only to claims that were brought in the prior action, but also to claims that "with propriety could have been litigated in the first suit." *Georg*, 456 Md. at 625. Although the Daughtrys are

correct that a claim may be barred by res judicata even if that particular claim was not brought in the prior litigation, that is so only where the new claim arises out of the same "transaction" as the old one. *Anne Arundel County Bd. of Educ. v. Norville*, 390 Md. 93, 109 (2005). The purpose of the rule is to prevent claims being brought piecemeal. Thus, courts have interpreted this transaction test to require claims that are "based upon the same set of facts[,] and [that] one would [ordinarily] expect . . . to be tried together," to be brought in the first claim or else be barred. *Gonsalves v. Bingel*, 194 Md. App. 695, 711 (2010) (quoting *Norville*, 390 Md. at 109).

To determine if a cause of action arises out of the same transaction as that at issue in prior litigation, courts will attempt to determine "whether the facts are related in time, space, origin, or motivation." *Gertz v. Anne Arundel County*, 339 Md. 261, 270 (1995). The more these factors differ between two actions, the less likely they are to have arisen out of the same transaction. *Id.* When actions are based on the "same facts and legal grounds," such that one would ordinarily expect them to be tried together, courts will generally conclude that they arise out of the same transaction. *See Georg*, 456 Md. at 679.

Here, we readily conclude that the current mortgage foreclosure action does not present an identical claim to the reformation claim at issue in the prior litigation. The prior case concerned a claim against Capital One to reform a subordination agreement to properly reflect the relative positions of two different lenders with an interest in the Property. That action was neither identical to the Substitute Trustees' foreclosure claim against the Property—in which the primary issue is not the position of the lenders relative to each other but the Substitute Trustees' right to foreclose on the Property—nor would

34

one ordinarily expect the two sets of claims to be brought together.[26]  Because the second element of res judicata is not satisfied, we will affirm the circuit court's determination that res judicata does not bar the Substitute Trustees' foreclosure action.[27]

## CONCLUSION

We hold that no statute of limitations applies to mortgage foreclosure actions and that res judicata did not bar this foreclosure action.  The circuit court therefore did not err in denying the Daughtrys' motion to stay or dismiss the foreclosure action.

> **JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.  COSTS TO BE PAID BY APPELLANTS.**

---

[26] In the prior action, the trustees also sought and obtained vis-à-vis the Daughtrys a declaratory judgment that the deed of trust created an enforceable lien against the Property.  The Daughtrys do not contend that the declaratory judgment aspect of the prior litigation has res judicata effect, presumably out of recognition that declaratory judgments give rise to issue preclusion but not to the claim preclusion of res judicata. *See Bankers & Shippers Ins. Co. of New York v. Electro Enters., Inc*., 287 Md. 641, 653-54 (1980).  That is because a declaratory judgment does not seek to "enforce a claim against [a] defendant," but rather seeks a "judicial declaration as to the existence and nature of a relationship between himself and the defendant." *Id.* (quoting Restatement of the Law (Second), Judgments § 76, Comment c.).

[27] The Daughtrys also invoke collateral estoppel, but that doctrine precludes only relitigation of issues that are actually resolved in prior litigation. *Georg*, 456 Md. at 668. The Substitute Trustees have not sought to relitigate any issue that was resolved against them in the prior litigation.