*Williams v. State of Maryland*, No. 2246, September Term 2022. Opinion by Zic, J.

**CRIMINAL LAW – PROMOTION OF A CRIMINAL ORGANIZATION – STATUTORY INTERPRETATION OF "PROMOTE"**

An individual who had previously admitted membership in a criminal organization and was confirmed by law enforcement to be a "validated" member of said organization was standing nearby while another admitted member of the same organization engaged in vandalizing public property by spray painting the name of the criminal organization on a public wall. While wearing the criminal organization's identifying color, the men posed for photographs while making hand gestures in front of the vandalism. The photographs were then shared on social media. Taken together, these actions constitute promotion of a criminal organization in violation of Md. Code Ann., Crim. Law ("CL") § 9-805 (2002, 2012 Repl. Vol.).

**CRIMINAL LAW – PROMOTION OF CRIMINAL ORGANIZATION – STATUTORY INTERPRETATION OF STATUTE'S FRAMEWORK**

CL § 9-805 only requires general intent *mens rea*. Evidence that an individual acted on his or her own volition is sufficient to prove a violation of § 9-805. According to the plain language of the statute, in order to be convicted under § 9-805, there is no requirement that the individual first must be convicted of a crime under § 9-804 and have committed an "underlying crime" listed in § 9-801. Accordingly, as long as the evidence demonstrates that an individual organized, supervised, promoted, sponsored, financed, or managed a criminal organization, the individual is in violation of § 9-805.

Circuit Court for Montgomery County
Case No. C-15-CR-22-000553

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 2246

September Term, 2022

_____

JAMAL ANTOINE WILLIAMS

v.

STATE OF MARYLAND

_____

Nazarian,
Zic,
Harrell, Glenn, T., Jr.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Zic, J.

_____

Filed: October 3, 2024

\* Friedman, Daniel, J. and Tang, Rosalyn, J. did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal requires us to interpret Md. Code Ann., Crim. Law ("CL") § 9-805 (2002, 2012 Repl. Vol.),[1] which prohibits, among other things, the promotion of a criminal organization. Appellant Jamal Williams was convicted under this statute for his involvement in spray-painting a reference to a criminal organization, i.e., gang, on a public wall. Mr. Williams was standing near Doncris Mussimi while Marcus Dowdy spray-painted a wall in blue paint to read "Roll Three N 30s Crip."

Mr. Williams contests the sufficiency of the evidence, arguing that the statute requires a specific intent *mens rea*, namely, that the individual also be convicted of participating in a criminal organization which requires committing a statute-specified "underlying crime" that Mr. Williams did not commit. The State of Maryland, appellee, points to the text of the statute and the legislative history to argue that only a general intent *mens rea* is required, and thus, there was sufficient evidence to convict Mr. Williams.

## QUESTIONS PRESENTED

Mr. Williams presents one question for our review, which we have recast and rephrased as follows:[2]

_____

[1] All statutory references in this opinion are to the Criminal Law Article.

[2] Mr. Williams phrased the questions as follows:

> Whether the felony "kingpin" criminal prohibition under C.L. § 9-805(a) against "organizing, supervising, promoting, sponsoring, financing, or managing a criminal organization" requires proof of the Appellant's purpose to further one of the subtitle's defined "underlying crimes" that makes participation in a criminal organization itself a crime?

Whether there was sufficient evidence to convict Mr. Williams under § 9-805.

For the following reasons, we hold that there was sufficient evidence to convict Mr. Williams under § 9-805. Therefore, we affirm.

## BACKGROUND

In the Circuit Court for Montgomery County, Mr. Williams entered a plea of not guilty to a single count of "promot[ing]" a criminal organization in violation of § 9-805. The parties stipulated to the following facts:

> The parties agree, Your Honor, that on December 7th, 2021, a brick wall at the Silver Spring[] Civic Center's Veteran's Plaza was defaced with graffiti. The graffiti read Roll Three N 30s Crip, and was painted with blue spray paint.
>
> [The manager of the Civic Center] informed the Montgomery County Police Department that the graffiti was unauthorized, and maliciously destroyed and defaced the wall at the center. He also informed the Montgomery County Police Department that it cost $1,080 to remove the graffiti and restore the wall.
>
> The Montgomery County Police Department assigned two detectives to investigate. Through their training and experience, they recognized the graffiti to reference the Rollin 30s Crips, a set of the [C]rips transnational street gang, a criminal organization. Some members of which have committed murder, rape, extortion, drug distribution and human trafficking. As well as kidnapping, fraud, prostitution, and other crimes.
>
> The [C]rips formed in Los Angeles, California in 1969, and have since spread nationally and internationally. Some national divisions of the [C]rips are often formed in a particular neighborhood, named for that neighborhood. And then sometimes expand their reach beyond the neighborhood.

2

The Rollin 30s Crip set formed in Los Angeles[,] spread actually to Belize, and then to New York City, New York. They have since expanded nationally, and the [C]rips use numerous hand signs to identify themselves to fellow members and rivals.

[The Crips are] [o]ften associate[d] with the color blue. Rivals of the [B]loods who wear red, and identify themselves as members that way. The Rollin 30s Crips are sometimes referred to as the original Harlem Crips or dirt gang, and they sometimes throw or display hand signs which incorporate an H or a D. H for Harlem. D for dirt gang. Criminal gangs often use graffiti to mark their territory and to promote and enhance their reputation.

The investigating detectives obtained video surveillance of Veteran's Plaza, which showed three men approaching the plaza wall at approximately 7:00 pm on December 7th, 2021. The detectives were able to identify the three men based on their distinctive clothing, which all three wore in multiple social media posts.

Marcus Dowdy (phonetic sp.) wearing a blue puffy coat, actually spray painted the wall at Veteran's Plaza. Jamal Williams, the defendant in this case, and Doncris Mussimi (phonetic sp.) stood watch.

After the tag had been sprayed, all three men posed for photographs with the graffiti, and displayed hand signs. The defendant did not post any images of the graffiti to social media.

After determining that Mr. Dowdy, Mr. Williams and Mr. Mussimi were the three men involved in the painting and graffiti at Veteran's Plaza, to promote the Rollin 30s Crips, the detectives obtained arrest warrants for the three men.

When Mr. Dowdy was taken into custody, he was searched. Inside a satchel slung over his shoulder was a Bryco Arms Model J-22, 22 caliber handgun, with a cartridge loaded in the chamber. Dowdy was previously convicted of robbery in case CT-09-1103A, in the Circuit Court for Prince

3

George's County.  Mr. Dowdy admitted being a member of the Rollin 30s Crips.

When Mr. Williams was taken into custody, he admitted previous membership in the [C]rips, and was wearing a blue shirt and a blue sock on his left foot.  Crips often wear blue on the[] left side[] of their body[] to indicate membership.  Mr. Williams identified Mr. Dowdy as the leader of their individual set.

Mr. Williams is seen on social media displaying hand signs, and Mr. Williams and Mr. Dowdy have been in communication via telephone while Mr. Dowdy was incarcerated.

Mr. Mussimi has also posted on social media displaying clothing, hand signs, and references promoting the Rollin 30s Crips.

Based on the foregoing, all three men were validated as members of the Rollin 30s Crips by the Montgomery County Police Department.  And all of those events that I mentioned occurred in Montgomery County, Maryland.

THE COURT:  Thank you. Any corrections, additions?

[DEFENSE COUNSEL]:  No, Your Honor.  We agreed these would be the facts upon which the evidence at trial, the jury could convict Mr. Williams on.

On the above stated facts, the circuit court found Mr. Williams guilty of promoting a criminal organization in violation of § 9-805.  Mr. Williams was sentenced to five years with all but six months suspended, and received a probation period of five years.  Mr. Williams then filed this timely appeal.

4

**STANDARD OF REVIEW**

We assess a challenge to the sufficiency of the evidence by answering "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Mungo v. State*, 258 Md. App. 332, 363 (2023). "When making this determination, the appellate court is not required to determine 'whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt.'" *Roes v. State*, 236 Md. App. 569, 583 (2018) (quoting *State v. Manion*, 442 Md. 419, 431 (2015)). "Thus, the limited question before an appellate court is not whether the evidence *should have or probably would have* persuaded the majority of fact finders but only whether it *possibly could have* persuaded *any* rational fact finder." *Scriber v. State*, 236 Md. App. 332, 344 (2018).

Although appellate review of the sufficiency of the evidence is typically "available only when the defendant moves for judgment of acquittal at the close of all the evidence and argues precisely the ways in which the evidence is lacking," *Anthony v. State*, 117 Md. App. 119, 126 (1997), "[i]n a criminal action in which the court is the trier of fact, the appellate court must entertain the issue of the sufficiency of the evidence when presented on appeal even in the absence of a motion for judgment of acquittal below." *Chisum v. State*, 227 Md. App. 118, 128 (2016).

# DISCUSSION

## I. THE EVIDENCE WAS SUFFICIENT TO SUSTAIN MR. WILLIAMS' CONVICTION UNDER § 9-805.

Mr. Williams was convicted of "promot[ing]" a criminal organization under

§ 9-805, which states:

> (a) A person may not organize, supervise, *promote*, sponsor, finance, or manage a criminal organization.
>
> (b) A person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 20 years or a fine not exceeding $1,000,000 or both.
>
> (c) A sentence imposed under this section shall be separate from and consecutive to a sentence for any crime based on the act establishing a violation of this section.

(Emphasis added.)

On December 7, 2021, Mr. Williams and Mr. Mussimi stood nearby and watched as Mr. Dowdy, who was dressed in a blue coat, spray-painted a public wall to read "Roll Three N 30s Crip" in blue paint. The Rollin 30s Crips is a criminal organization that often associates with the color blue. After Mr. Dowdy defaced the wall, the three men posed for photographs in front of the wall, displaying hand signs. Although the photos of the men and Mr. Williams were posted to social media, Mr. Williams was not the one to post the images.

The Montgomery County Police Department determined that all three individuals are "validated" members of the Rollin 30 Crips based on the foregoing and the following. While in police custody, Mr. Dowdy admitted to being a member of the Crips. Mr. Mussumi "had also posted on social media displaying clothing, hand signs, and

6

references promoting the Rollin 30s Crips." Once in custody, Mr. Williams identified Mr. Dowdy as the leader of the three men and admitted to previous membership in the Crips organization. Police also found that Mr. Williams was wearing a blue sock on his left foot and a blue shirt.

## A. Parties' Contentions

Mr. Williams argues that the evidence was legally insufficient to sustain a conviction for promoting a criminal organization because § 9-805 requires a specific intent *mens rea*. He argues that "the General Assembly intended § 9-805 to enhance the punishment of participants in criminal organizations who are more culpable because they 'organize, supervise, promote, sponsor, finance, or manage a criminal organization' to further the commission of an 'underlying crime' for the benefit of the criminal organization." Accordingly, to "limit [§ 9-805]'s scope," Mr. Williams argues that § 9-805 requires a prerequisite of being found guilty of committing the offense of participation in a criminal organization under § 9-804. Mr. Williams points to the language of § 9-804, which states in relevant part:

> (a) A person may not:
>
> (1) *participate in a criminal organization knowing that the members of the criminal organization engage in a pattern of organized crime activity*; and
>
> (2) *knowingly and willfully direct or participate in an underlying crime*, or act by a juvenile that would be an underlying crime if committed by an adult, committed for the benefit of, at the direction of, or in association with a criminal organization.

7

§ 9-804 (emphasis added). An "underlying crime" is defined in § 9-801, which includes, for example, a "crime of violence," other specifically listed crimes such as "second degree assault," or "sex trafficking," or various felony violations. CL § 9-801(g). Accordingly, in order to be convicted of participation in a criminal organization under § 9-804, an individual must have committed a specified crime as outlined in § 9-801.[3]

---

[3] In its entirety, § 9-801 reads:

> (g) "Underlying crime" means:
>
>> (1) a crime of violence as defined under § 14-101 of this article;
>>
>> (2) a violation of § 3-203 (second degree assault), § 3-1102 (sex trafficking), § 3-1103 (forced marriage), § 4-203 (wearing, carrying, or transporting a handgun), § 7-113 (embezzlement by fiduciary), or § 7-315 (theft — telecommunications-related) of this article, § 9-102 (subornation of perjury), § 9-202(a) (bribery of juror), § 9-302 (inducing false testimony or avoidance of subpoena), § 9-303 (retaliation for testimony), § 9-305 (intimidating or corrupting juror), § 9-306 (obstruction of justice), § 9-307 (destruction of evidence), § 9-413 (contraband — for escape), § 9-416 (contraband — controlled dangerous substance), or § 9-417 (contraband — telecommunications-related) of this title, or § 11-304 (receiving earnings of prostitute), § 11-307 (house of prostitution), or § 12-104 (gaming offenses) of this article;
>>
>> (3) a felony violation of § 3-701 (extortion), § 4-503 (manufacture or possession of destructive device), § 5-602 (distribution of CDS), § 5-603 (manufacturing CDS or equipment), § 5-604(b) (creating or possessing a counterfeit substance), § 5-606 (false prescription), § 6-103 (second degree arson), § 6-202 (first degree burglary), § 6-203 (second

(continued)

8

CL §§ 9-801, 804. Mr. Williams argues that the legislative history and statutory construction demonstrate that the Maryland General Assembly intended § 9-805 to convict "the more culpable 'kingpins.'" As such, Mr. Williams argues that a conviction for participation in a criminal organization under § 9-804 is a prerequisite for a conviction of promoting such an organization under § 9-805.

As previously detailed, a conviction under § 9-804 first requires a conviction of an underlying crime specified in § 9-801. Mr. Williams argues that since § 9-801 does not include "the misdemeanor [of] malicious destruction or defacement of property under [] § 6-301 or the common law," Mr. Williams' actions do not constitute an "underlying crime" as defined in § 9-801. Therefore, because Mr. Williams cannot be convicted of participation in a criminal organization under § 9-804, he argues that according to his preferred interpretation of § 9-805, he additionally cannot be convicted of promoting a criminal organization under § 9-805.

---

degree burglary), § 6-204 (third degree burglary), § 7-104 (theft), or § 7-105 (unauthorized use of a motor vehicle) of this article;

(4) a felony violation of § 5-133 of the Public Safety Article;

(5) a crime under the laws of another state or of the United States that would be a crime listed in items (1) through (4) of this subsection if committed in this State; or

(6) the attempted commission of, conspiracy to commit, or solicitation of a crime or act listed in items (1) through (5) of this subsection.

CL § 9-801.

The State responds that per the language of the statute, § 9-805 does not require a specific *mens rea*; it only requires general intent. The State argues that neither the language of § 9-805 nor the legislative history of the statute require the promotion of a criminal organization to be done in furtherance of the commission of a § 9-801 underlying crime. By relying on statutory interpretation principles for both *mens rea* and the definition of "promote," the State argues that it met its burden under § 9-805 by proving that Mr. "Williams had the general intent to promote a criminal organization . . . [by] assisting in the defacement of public property with gang graffiti[] [that] promot[ed] the Rollin 30s Crips[.]" In the alternative, the State argues that even if specific intent were required under § 9-805, Mr. Williams' actions still sustain a conviction.

## B.     Analysis

### 1.     *There was sufficient evidence that Mr. Williams' actions constituted a promotion of a criminal organization under § 9-805.*

To address whether there was sufficient evidence that Mr. Williams "promoted" a criminal organization, we must first assess the meaning of "promote." The "cardinal rule of statutory interpretation" is to "ascertain" the intent and purpose of the General Assembly "when it enacted the statute." *Wheeling v. Selene Fin. LP*, 473 Md. 356, 376 (2021).

The inquiry "begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology." *Schreyer v. Chaplain*, 416 Md. 94, 101 (2010). The "theory" behind the plain language inquiry is "that the General Assembly is presumed to have meant what it said and said

10

what it meant." *Daughtry v. Nadel*, 248 Md. App. 594, 612 (2020) (quotation marks and citations omitted). The "plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim or policy of the Legislature in enacting the statute." *Id.* (quotations and citations omitted).

If the language is not ambiguous, our analysis usually ends. *State v. Johnson*, 415 Md. 413, 421 (2010). Even if the words of the statute are unambiguous, we "often find it prudent to scrutinize the legislative history to confirm that our interpretation of the statute's plain language accords with the [L]egislature's intent." *Daughtry*, 248 Md. App. at 613 (quotation marks and citations omitted); *see also In re S.K.*, 466 Md. 31, 50 (2019) ("[T]he modern tendency . . . is to continue the analysis of the statute beyond the plain meaning to examine 'extrinsic sources of legislative intent' in order to 'check [] our reading of a statute's plain language' through examining 'the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments.'") (second alteration in original) (quoting *Brown v. State*, 454 Md. 546, 551 (2017)). If there is ambiguity in the words of the statute, "we resolve the ambiguity using a wider range of interpretive aids, including legislative history, prior case law, statutory purpose and statutory structure." *Mungo*, 258 Md. App. at 364 (quoting *Fisher v. E. Corr. Inst.*, 425 Md. 699, 707 (2012)).

As we discuss below, CL § 9-805 does not define the term "promote," the legislative history is inconclusive, and the Maryland appellate courts have not previously addressed the meaning of this term in this context. As subsequently detailed, we must

11

instead rely on the natural and ordinary meaning of the word. Doing so, we conclude that Mr. Williams' actions constitute the promotion of a criminal organization.

When § 9-805 was originally enacted in 2010, it did not include the term "promote" and only listed: "organize, supervise, finance, or manage." Md. Ann. Code, CL § 9-805(a) (2002, 2010 Supp). Legislators added the words "promote" and "sponsor" to the statute's list in 2016. *See* 2016 Md. Laws Ch. 515 (S.B. 1005). The first reading of the Senate Bill did not include the two words as an amendment to § 9-805, but an amendment by the House Judiciary Committee added both words. S.B. 517 First Reading, Md. Senate 2016 Reg. Sess., https://perma.cc/8ZKP-UPPL; H.B. 1312, House Judiciary Committee Amendments to House Bill 1312, Md. 2016 Reg. Sess., https://perma.cc/DQ5G-GTHQ. The two words were subsequently included in the conference committee report, which was then adopted and enacted into law. S.B. 1005 Conference Committee Report, Md. 2016 Reg. Sess.; Justice Reinvestment Act, 2016 Md. Laws Ch. 515 (S.B. 1005). This legislative history provides no discussion on the definition of "promote." The statutory scheme of §§ 9-801 through 9-807 does not define "promote" or the other words listed in § 9-805.

Absent a definition by the Legislature, "we determine the intended scope of the term by applying the language's natural and ordinary meaning, by considering the express and implied purpose of the statute, and by employing basic principles of common sense, the meaning these words intend to convey." *Goff v. State*, 387 Md. 327, 344 (2005). "[W]here a term is not defined by statute, we may refer to the dictionary and give the words their ordinary meaning." *State v. Wilson*, 471 Md. 136, 160 (2020). The

12

Oxford English Dictionary defines "promote" as a verb that means to "support or actively encourage (a cause, venture, etc.); further the progress of" or "give publicity to (a product, organization, or venture) so as to increase sales or public awareness." *Promote*, OXFORD ENGLISH DICTIONARY (3rd ed. 2010).

Mr. Williams cites to Merriam-Webster's definition of "promote." The Merriam-Webster Dictionary defines "promote" as a transitive verb that means "to contribute to the growth or prosperity of" such as "to help bring (something, such as an enterprise) into being." *Promote*, MERRIAM-WEBSTER, https://perma.cc/T6QM-J2KX. Mr. Williams argues that the "basic definition of promotion is so broad that, without a specific *mens rea*, it fails to give notice of a sufficiently clear course of conduct to avoid a felony conviction." Mr. Williams argues that the purpose of § 9-805 is to prosecute "kingpins," rather than lower-level criminal organization members, so his actions do not amount to promotion under the statute. He points to *noscitur a sociis*[4] to argue that the list of words in § 9-805 "represent[] foundational conduct (*i.e.*, bringing the enterprise into existence) or the authoritative conduct of a leader advancing the ends of an organization from a higher role in the organizational structure."

Mr. Williams contends that § 9-805 is a "'kingpin' criminal prohibition" because, during the Senate floor proceedings, Senator Robert Zirkin described the amended Senate

---

[4] *Noscitur a sociis*, BLACK'S LAW DICTIONARY (12th ed. 2024) (translates to "it is known by its associates," and defined as "[a] canon of construction holding that the meaning of an unclear word or phrase, esp. one in a list, should be determined by the words immediately surrounding it").

13

Bill as creating a "new crime" called a "gang kingpin" offense. Maryland Senate Floor Proceedings (04/10/2010), 51:25-51:35, https://perma.cc/2654-PJW9.  Mr. Williams also points to the fact that in 2010, the Legislature referred to § 9-805 in the fiscal policy note as a "gang kingpin offense" where "a person is prohibited from organizing, supervising, financing, or managing a criminal gang."   Maryland Fiscal Note Revised, 2010 Sess. S.B. 517, at 2, https://perma.cc/ZCY4-M2D8.[5]  The word "kingpin," however, is nowhere in the text of the statute.  Furthermore, the Legislature did not add "promote" or "sponsor" until 2016, and during the amendment process, the statute was not referred to as a "kingpin" offense. 2016 Maryland Laws Ch. 515 (S.B. 1005).  We decline to read into the statute that which is not there, and we assume that the Legislature carefully chose the language used.  *See Robert B. v. State*, 193 Md. App. 620, 627 (2010) ("Additionally, we neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage[d] in forced or subtle interpretation in an attempt to extend or limit the statute's meaning." (cleaned up)).

The State argues that the plain meaning definition of "promote" applies here.  The State analogizes to an Indiana statute criminalizing "the promotion of a criminal organization[] or furthering the interests of a criminal organization," noting that the

---

[5] We recently noted that "not all legislative history has equal value." *Logan v. Dietz*, 258 Md. App. 629, 669 n.10 (2023) (internal modification and citation omitted). "While [fiscal policy] notes provide a broad summary and background regarding the proposed bill, they are prepared by Department of Legislative Services staff and sometimes miss the detail and nuances that the committee staff provides in the committee bill analysis and floor reports." *Id.* at 670 n.10.  The fiscal policy note cited by Mr. Williams is neither conclusive nor persuasive evidence that the Legislature intended an amendment passed six years later to be a "kingpin" offense.

Supreme Court of Indiana has interpreted spray-painting walls as "broadcast[ing]" that an individual is in association with a gang and is "further[ing] the interest" of the gang. *Owen v. State*, 210 N.E. 3d 256, 266 (Ind. 2023). Because Mr. Williams "does not challenge the evidence that he was . . . working with other gang members," and does not "contest that the graffiti was in support of the Rollin[] 30s Crips gang," the State argues that the "graffiti is a means for a gang to mark its territory and bolster its reputation in an area." The State also argues that the "graffiti was meant to contribute to the growth or progress of the gang" and, therefore, Mr. Williams was properly convicted of promotion of a criminal organization.

Here, Mr. Williams admitted to previous membership in the criminal organization, the Rollin 30s Crips. When taken into custody, he was wearing a color associated with the criminal organization, in the form of a blue sock on his left foot and a blue shirt. He also identified Mr. Dowdy, an admitted member of the Rollin 30s Crips, as the "leader" of the spray-painting group. When Mr. Dowdy defaced the wall with the name of the criminal organization in blue spray paint, Mr. Williams was present, standing nearby. Mr. Williams then posed for photographs in front of the graffiti, which were subsequently posted to social media. The stipulated statement of facts also acknowledges that the police department considered all three men "validated" members of the criminal organization. Mr. Williams' presence during the creation of the graffiti, association with the Rollin 30s Crips, and photos of him in front of the graffiti wall publicized on social media contribute to a finding of promotion of a criminal organization under § 9-805.

15

As more than a mere bystander, Mr. Williams "support[ed]," "encourage[d]," and "g[a]ve publicity to" a criminal "organization . . . so as to increase sales or public awareness" by aiding a crime committed by an admitted member of a criminal organization. *Promote*, OXFORD ENGLISH DICTIONARY (3rd ed. 2010). The spray-painted message worked to advertise the Rollin 30s Crips, thereby strengthening its reputation and furthering the interests of the gang. "[A]fter viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" that Mr. Williams' actions help grow the criminal organization. *Mungo*, 258 Md. App. at 363. Accordingly, the evidence was sufficient to sustain Mr. Williams' conviction of promotion of a criminal organization.

### 2. CL § 9-805 *only requires a general intent* mens rea *and accordingly does not require a further intent to participate in a criminal organization.*

Mr. Williams additionally argues that "[t]he General Assembly intended to require a specific *mens rea* that narrows the sweep of § 9-805 to those persons engaged in participation in a criminal organization under [] § 9-804 as an organizer, supervisor, promoter, sponsor, financier, or manager." Mr. Williams argues that the statute requires a specific intent because the plain and ordinary definition of "promote" is "expansive" and because the statute is not a strict liability offense. Regarding the level of criminal intent required, Mr. Williams only raises an argument regarding strict liability and specific intent, but we hold that § 9-805 is a general intent offense.

16

Quoting from *Lawrence v. State*, the State argues that "the omission of language indicating *mens rea* does not unquestionably eliminate *mens rea* as an element of a criminal statute." 475 Md. 384, 409 (2021). Because the text of the statute does not require an act or intent beyond the "description of a particular act," the State argues § 9-805 is a general intent offense. *Chow v. State*, 393 Md. 431, 465 (2006) (citation omitted).

Our courts have defined specific intent as "not simply the intent to do an immediate act, but the 'additional deliberate and conscious purpose or design of accomplishing a very specific and more remote result.'" *Harris v. State*, 353 Md. 596, 603 (1999) (quoting *Shell v. State*, 307 Md. 46, 63 (1986)). General intent is the intent "to do the immediate act with no particular, clear or undifferentiated end in mind." *Harris*, 353 Md. at 604. "[T]o determine whether a particular crime requires a necessary specific intent, 'we must inquire whether, in addition to the general intent to do the immediate act, it embraces some additional purpose or design to be accomplished beyond that immediate act.'" *Id.* at 605 (quoting *Wieland v. State*, 101 Md. App. 1, 37-38 (1994)). This is a question of statutory interpretation. First, we look to the language of the statute. *Harris*, 353 Md. at 606. Then, if the language is not clear, we look outside the language to other sources. *Id.*

The text of § 9-805 does not state a necessary intent, making no reference to intent at all. The legislative history, described above, also is not clear. "When a statute does not contain any reference to intent, general intent is ordinarily implied." *Id.* Thus, "[w]hen the definition of a crime consists of only the description of a particular act,

17

without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent." *Id.* at 604. Conversely, "[w]hen the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent." *Id.* Here, because the text and legislative history do not suggest a required specific intent *mens rea*, we decline to read one into the statute. *See Price v. State*, 378 Md. 378, 387 (2003) ("A court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute." (citation omitted)). Accordingly, we hold that § 9-805 is subject to a general intent *mens rea*.

In this case, it was sufficient to show general intent by proving Mr. Williams acted on his own volition, and that this action constituted promotion of the criminal organization. Therefore, because we hold that "promot[ion]" of a criminal organization under § 9-805 is a general intent offense, we conclude there was sufficient evidence to convict Mr. Williams of violating § 9-805.

### 3. *CL § 9-805 does not require a prerequisite conviction under § 9-804.*

Mr. Williams claims that in order to be convicted under § 9-805, the individual must first be convicted of a crime under § 9-804 and have committed an "underlying crime" listed in § 9-801. Mr. Williams contends that "construing 'promote' apart from the base offense of participation in a criminal organization is inconsistent with the statutory scheme and produces an illogical result." Mr. Williams argues that because the

18

"base offense" of "participat[ing] in a criminal organization" under § 9-804 requires knowledge that the members engage in organized crime and the participation in an "underlying crime," § 9-805 must also require conviction under § 9-804. CL § 9-804(a)(1)-(2).

Put differently, Mr. Williams argues that it would be "absurd[]" to be able to convict someone under § 9-805 without first finding that person liable under § 9-804 for an underlying crime under § 9-801, because the "statutory scheme" was "designed to enhance the punishment of participants in criminal organizations along a gradient scale" so that those "who are more culpable because they 'organize, supervise, promote, sponsor, finance, or manage a criminal organization' to further the commission of an 'underlying crime' for the benefit of the criminal organization" receive a more severe punishment. Without this precursor requirement, a person could commit an act that "arguably benefits a criminal organization" and thus be liable under § 9-805 but not for participation in the criminal organization under § 9-804.

Mr. Williams believes this outcome would be "absurd[]," because according to the 2010 fiscal policy note, § 9-805 was enacted to prosecute gang kingpins. Maryland Fiscal Note Revised, 2010 Sess. S.B. 517, at 2, https://perma.cc/ZCY4-M2D8. Accordingly, he argues, § 9-805 should not be used to prosecute individuals who could not be found liable under § 9-804 for "participating in a criminal organization." Mr. Williams further claims that "[t]here is no evidence nor any logical reason to believe that adding the word 'promote' was meant to drastically change the meaning of § 9-805 as a kingpin offense."

19

The State argues in response that the requirement that an individual first be found liable under § 9-804 is "found nowhere in the statute and adding [it] would require this Court to engage in significant revisions to the statute absent any legislative intent." Because "promote" is "not defined in the statute," the State examined the limited legislative history finding that the "legislative history sheds little light on the meaning of 'promote' under the statute." The State argues that this Court should accordingly "decline the invitation" to read a requirement not written into the statute.

Neither the text of the statute nor meaningful legislative history lend support to Mr. Williams' argument. Mr. Williams heavily relies on the 2010 fiscal policy note reference to § 9-805 as a "gang kingpin offense"; however, he fails to reconcile this with the fact that the Legislature did not add "promote" or "sponsor" until 2016. Maryland Fiscal Note Revised, 2010 Sess. S.B. 517, at 2, https://perma.cc/ZCY4-M2D8; S.B. 1005, H. Jud. Comm. Amend. 1, 2016 Sess. (Md. 2016), https://perma.cc/8NXV-5H9J. During the latter amendment process, the statute was not referred to as a "kingpin" offense, and the word "kingpin" is nowhere in the text of the statute. Therefore, there is neither textual nor legislative support for Mr. Williams' contention that § 9-805 was intended to outline a "kingpin" offense.

The language of § 9-805 does not state that an individual must first be found liable under § 9-804 or have committed a specified underlying crime under § 9-801. We presume that the language used by the General Assembly is specifically chosen. *See Daughtry*, 248 Md. App. at 612. We need look no further than § 9-804, which demonstrates that the Legislature knows how to add the requirement of commission of an

underlying crime. Section 9-804 clearly states that in order to be found guilty of participating in a criminal organization, the individual must "knowingly and willfully direct or participate in an *underlying crime*." CL § 9-804(a)(2) (emphasis added). If the Legislature intended to require that a person commit an "underlying crime" to be found liable under § 9-805, it would have said as much. Guided by the text of the statute, we decline to hold that a conviction under § 9-805 also requires guilt under § 9-804, or commission of an "underlying crime" listed in § 9-801.

## CONCLUSION

We hold that § 9-805 is a general intent offense that does not require a precursory finding of liability under § 9-804 for participation in a criminal organization along with a finding of liability of an underlying offense under § 9-801. We hold that under the ordinary meaning of the word "promote," there was sufficient evidence to convict Mr. Williams under § 9-805 for promotion of a criminal organization based on his affiliation with a criminal organization and his presence when a gang-member spray-painted a gang reference on a public wall.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

21